947 A.2d 646

RICHARD A. ROMAGNOLA, PLAINTIFF–APPELLANT, v. GILLESPIE, INC., A NEW JERSEY CORPORATION, RICHARD GILLESPIE, INDIVIDUALLY, AND AS PRESIDENT OF GILLESPIE, INC., AND THE INTERPUBLIC GROUP OF COMPANIES, INC., DEFENDANTS–RESPONDENTS.

Argued May 5, 2008—Decided June 2, 2008.

*Thomas P. Scrivo* argued the cause for appellant (*McElroy, Deutsch, Mulvaney & Carpenter,* attorneys; *Mr. Scrivo* and *Joshua A. Zielinski,* on the briefs).

*Craig S. Hilliard* argued the cause for respondents (*Stark & Stark,* attorneys; *Mr. Hilliard* and *Michael T. Pidgeon,* on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

Our *Rules of Court* are subject to periodic review and, as needed, amendment. On rare occasions, a change in a *Rule* occurs while a lawsuit is pending and a party to that suit, who properly invoked that *Rule* in its pre-amendment form, is unable to conform its earlier compliance to the amended *Rule.* As a result, that party is unable to enjoy the advantage its compliance with the earlier version of the *Rule* would have provided.

This appeal presents that rare instance. When that quandary arises, *Rule* 1:1–2, which allows for the relaxation of any *Rule of Court* "if adherence to it would result in an injustice[,]" provides a fair and equitable safety valve. We apply that principle here to provide relief to the compliant party.

## I.

In February 1998, plaintiff Richard A. Romagnola and defendant Gillespie, Inc. (the Agency) entered into an asset purchase agreement whereby plaintiff sold his advertising agency to the Agency. As part of that arrangement, plaintiff also signed an employment agreement with the Agency. Shortly after the transaction between plaintiff and the Agency was completed, defendant The Interpublic Group of Companies, Inc. (IGC) offered to acquire the Agency. As envisioned, that acquisition would have breached certain covenants between plaintiff and the Agency. In December 2000, after the Agency had expressed an unwillingness to restructure its acquisition by IGC so that plaintiff was not adversely affected thereby, plaintiff filed a verified complaint against the

Agency, its principal Gillespie, and IGC,[1] alleging a breach of the asset purchase agreement and the employment agreement, a breach of the implied covenant of good faith and fair dealing, and unjust enrichment. In January 2001, plaintiff filed an amended verified complaint, adding a count seeking a declaratory judgment.

Plaintiff and defendants engaged in extensive discovery and motion practice. During these proceedings, on March 20, 2002, plaintiff submitted an offer of judgment to defendants, whereby he "offer[ed] to take judgment, without prejudice, against all defendants, collectively, in the amount of one million, one hundred sixty[-]five thousand dollars and no cents ($1,165,000.00) and a withdrawal of defendants' counterclaims and any and all claims against plaintiff." That offer of judgment also provided that defendants had until ten days before trial started or ninety days after service of the offer, whichever expired sooner, to accept the offer or it would be withdrawn.[2]

When plaintiff made his offer of judgment in March 2002, the offer of judgment rule provided as follows:

> If the offer of a claimant is not accepted and the claimant obtains a verdict or determination at least as favorable as the rejected offer, the claimant shall be allowed, in addition to costs of suit, (a) all reasonable litigation expenses incurred following non-acceptance; (b) eight per cent interest on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later; and (c) a reasonable attorney's fee, which shall belong to the client, for such subsequent services as are compelled by the non-acceptance. [*Rule* 4:58–2 (eff. Sept. 5, 2000).]

Thus, under *Rule* 4:58–2 as it existed at the time plaintiff made his offer of judgment, plaintiff would have been entitled to the follow-

---

[1] Plaintiff's complaint named "Gillespie, Inc., Richard Gillespie, individually and as president of Gillespie, Inc., and The Interpublic Group of Companies, Inc." as defendants. For ease of reference, all defendants—the Agency, its principal Gillespie, and IGC—are collectively referred to as defendants.

[2] Almost a year later, on March 4, 2003, defendants made their own $900,000 offer of judgment to plaintiff, "inclusive of all interest, costs and attorneys fees in settlement of the claim of [p]laintiff[.]" Needless to say, plaintiff did not accept defendants' offer.

ing if he recovered a judgment equal to or greater than $1,165,000: all of his litigation expenses and reasonable attorneys' fees incurred after June 28, 2002—the date ninety days after plaintiff made his offer of judgment and, hence, the date by which the offer was deemed not accepted—together with eight per cent interest on the judgment commencing as of the date of completion of discovery.

The case was tried without a jury between October 2003 and March 2004, and post-trial submissions were completed by June 2004. While the matter stood submitted, and effective September 1, 2004, the offer of judgment rule was amended so that the qualifying amount of money judgment recovered required to trigger the remedies allowed by that *Rule* was increased from a sum "at least as favorable as the rejected offer" to, instead, "an amount that is 120% of the offer or more[.]" *Rule* 4:58-2 (eff. Sept. 1, 2004). Three weeks later, on September 24, 2004, the trial court rendered its judgment in favor of plaintiff and against defendants in the aggregate sum of $1,315,909.63, excluding pre-judgment interest. Significantly, the judgment entered by the trial court, while "at least as favorable as the rejected offer" of $1,165,000, was not "120% of the offer or more[.]" [3]

Defendants moved for reconsideration and a new trial, while plaintiff moved for an award of expenses, fees and pre-judgment interest under the offer of judgment rule. In respect of plaintiff's application, the trial court, in a written decision, concluded that

under the precedent of this State, [plaintiff's] rights had not vested at the time that *Rule* 4:58-2 was amended. Although [p]laintiff's argument that his rights "vested" at such time as he could no longer modify his Offer of Judgment, the Court knows of no precedent applying such a standard. As such, [plaintiff's] application for fees under *R[ule]* 4:58-2 must be denied. The Court notes the harshness of such a result: through no fault of his own, [plaintiff] is precluded from a substantial recovery of counsel fees. [Plaintiff] was not provided any opportunity to amend his

---

[3] A sum 120% or more of plaintiff's $1,165,000 offer of judgment had to be at least $1,398,000, or $82,090.37 greater than the $1,315,909.63 judgment the trial court awarded plaintiff.

Offer of Judgment under the Court Rules. As such, [plaintiff] was without a remedy to protect his rights under the prior version of *R[ule]* 4:58-2.

The trial court noted that it was "concerned that strict application of the rule of retroactivity in this matter may be contrary to the interests of ultimate fairness." It nevertheless determined that, "under the controlling precedent of this State, the Court has no other choice than to bar [plaintiff] from recovery." [4]

Defendants appealed, and plaintiff cross-appealed. In an unpublished decision, the Appellate Division affirmed in part and reversed in part the judgment of the Law Division and remanded the cause.[5] In respect of plaintiff's claim for an award under the offer of judgment rule, the panel noted that it "agreed with the trial court's application, in the circumstances, of the time-of-decision rule in denying plaintiff's request for counsel fees and other awards under the offer of judgment rule, *Rule* 4:58, specifically *Rule* 4:58-2." It explained that "case law pertaining to procedural changes, i.e. rule amendments, clearly establishes that, normally, the rule in effect on the date a judgment or order is

---

[4] The trial court did award pre-judgment interest to plaintiff, but based that award on the sums defendants had earned by placing what they had offered in the way of an offer of judgment in escrow, an amount significantly less than what plaintiff would have been entitled to had the *Rule's* eight per cent interest factor on the amount of the judgment been applied.

[5] Specifically, the Appellate Division "remand[ed] a) for reconsideration and possible modification of the judgment in respect of defendants' entitlement to restitution/interest damages in connection with the salary continuation paid to plaintiff; and b) for recalculation of damages to reflect the advance payment to plaintiff of an earn-out/bonus entitlement, and such modification of the judgment as that recalculation requires." It explained that, "[o]n remand, the trial court shall also consider the extent to which the issues reconsidered should result in adjustment of the entitlement to prejudgment interest already adjudicated." It concluded that, "[e]xcept for the need to consider making such discrete adjustments, we affirm the trial court's ruling on prejudgment interest for the reasons stated." On the present record, we cannot ascertain whether, once made, the adjustments ordered by the Appellate Division will reduce the judgment to which plaintiff is entitled to a level below where it would qualify for remedies under the pre-amendment offer of judgment rule. We therefore express no opinion on that subject, which must abide the remand ordered by the panel.

entered will govern." It reasoned that "*Rule* 4:58–2 is a procedural rule with remedial effect, set in place by the Supreme Court to promote early settlements[,]" thus concluding that "[b]ecause it is a rule of procedure, the version in effect on the date the trial court issued its decision awarding plaintiff damages governs."

The Appellate Division then addressed plaintiff's argument "that, through no fault of his own, he was unfairly and unjustly denied the benefits of the prior version of *Rule* 4:58–2, and was powerless to avoid the detriment visited upon him by the amendment to that rule." It noted that "[t]he trial court understood the argument and expressed concern for plaintiff's position, concluding, however that 'controlling precedent' furnished 'no other choice' than to deny the relief plaintiff sought." It reluctantly noted that "[w]ith the same concern, we agree with the trial court on this point." It explained that plaintiff possessed "no vested right in the pre-amendment operation of *Rule* 4:58–2, and the time that passed between the close of evidence and the trial court's decision in the matter, though extended, was understandable given the length of the trial, the volume of the proofs, and the complexity of the issues."

The panel also rejected plaintiff's application under *Rule* 1:1–2 to relax the effect of the September 1, 2004 amendments to *Rule* 4:58–2. It saw "no basis in the interests of justice to relax the newly-arrived-at standards of the rule." It reasoned that "[t]o do so in order to recognize plaintiff's entitlement to the awards authorized by the *Rule* would subject defendants to an increased judgment through no fault of their own." It posited that "[w]hen a rule is amended, every party in pending litigation is potentially affected one way or another; some parties receive a procedural or substantive benefit, others suffer a concomitant detriment." It thus concluded that "[a] straightforward application of time-of-decision principles has the merit, in all events, of holding all parties to the same external standard."

We granted plaintiff's petition for certification, "limited solely to the issue of the application of the September 1, 2004[ ] amendment

to *Rule* 4:58–2 to the March 20, 2002[ ] offer [of] judgment by plaintiff." 192 *N.J.* 597, 934 *A.*2d 639 (2007). For the reasons that follow, we reverse the judgment of the Appellate Division on that limited issue.

## II.

Plaintiff contends that "the Appellate Division erred in affirming the retroactive application of amendments to *Rule* 4:58–2 when the trial had concluded prior to the amendment and when the retroactive application of the amendment resulted in a manifest injustice." Defendants, on the other hand, claim that "[t]he Appellate Division correctly followed established precedent in applying *Rule* 4:58–2(b)." [6] We address those contentions within the framework of *Rule* 1:1–2.

## III.

■ We need not address whether *Rule* 4:58–2, as amended effective September 1, 2004, should have been given retroactive application. For the limited purposes of this opinion, we assume that the trial court correctly determined that "*R[ule]* 4:58 is a rule of procedure[,]" (citing *Crudup v. Marrero*, 57 *N.J.* 353, 273 *A.*2d 16 (1971); *Busik v. Levine*, 63 *N.J.* 351, 360–61, 307 *A.*2d 571, *appeal dismissed*, 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973)); that "[a] procedural rule is 'in general to be deemed applicable to actions pending on its effective date as well as those instituted thereafter[,]' " (quoting *Paulison Ave. Assoc. v. Passaic*

---

[6] Defendants' reliance on *Rule* 4:58–2(b) is misplaced. Subsection (b) of that *Rule*—which allows for an undue hardship exception to the mandatory awards required for qualifying offers of judgment—was an entirely new provision adopted July 27, 2006 and effective September 1, 2006, two years after the judgment was entered in this case. For purposes of this appeal, we assume defendants' argument is based on *Rule* 4:58–2 as it existed immediately before and on the date the trial court delivered its judgment, and not on an inapplicable provision.

*City*, 18 *N.J.Tax* 101, 113 (Tax Ct.1999)); and that plaintiff's "rights had not vested at the time *Rule* 4:58–2 was amended."

The concerns raised by both the trial court and the Appellate Division in respect of the harshness of the result visited on plaintiff as a result of the rule amendment, however, lead us to question whether the effect of *Rule* 4:58–2 as amended effective September 1, 2004 should be relaxed. For the reasons that follow, we conclude that, in the peculiarly idiosyncratic set of facts presented in this case, a relaxation of the September 1, 2004 amendments to *Rule* 4:58–2 is a fitting and proper exercise of judicial discretion.

*Rule* 1:1–2 provides that the *Rules of Court* "shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." It further provides that, "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." *Ibid.* That latter provision, allowing for the relaxation of a *Rule* "if adherence to it would result in an injustice[,]" sets forth the foundation for our determination.

"[T]he relaxation provision [of *Rule* 1:1–2] should be sparingly resorted to, particularly when a reasonable interpretation of the complex of directly applicable rules meets the problem at hand." Pressler, *Current N.J. Court Rules*, comment 2 to *Rule* 1:1–2 (2007). *Accord Bender v. Adelson*, 187 *N.J.* 411, 431, 901 *A.*2d 907 (2006) (explaining that "the application of *Rule* 1:1–2, the catch-all relaxation rule, . . . 'should be sparingly resorted to[.]' " (quoting Pressler, *Current N.J. Court Rules*, comment 2 on *Rule* 1:1–2 (2006))). In a similar context, we recently noted that:

> Justice Clifford's dissent in *Stone v. Township of Old Bridge*[, 111 *N.J.* 110, 543 *A.*2d 431 (1988)] captures the spirit that animates *Rule* 1:1–2: "Our Rules of procedure are not simply a minuet scored for lawyers to prance through on pain of losing the dance contest should they trip." Case law and common sense, however, demonstrate that *Rule* 1:1–2 is the exception, rather than the norm.
>
> [*State v. Williams*, 184 *N.J.* 432, 442, 877 *A.*2d 1258 (2005) (citations omitted).]

We further explained that "[d]etermining whether relaxation is appropriate ... requires an examination and balancing of the interests that are at stake." *Id.* at 443, 877 *A*.2d 1258. It is to that examination and balancing process that we now turn.

The facts are undisputed. In March 2002, plaintiff tendered a valid offer of judgment consistent with provisions of the *Rule* then obtaining; that offer was not accepted by defendants. Once trial started in October 2003, plaintiff could no longer make or amend his offer of judgment as, in order to be timely, it must be made no later than "20 days before the actual trial date[.]" *R.* 4:58–1 (eff. Sept. 1, 1998).[7] The admittedly complex evidence portion of this trial was completed by March 2004, and all post-trial submissions had been made by June 2004. Three months later, on September 24, 2004, the trial court entered its judgment in plaintiff's favor. Unfortunately, three weeks earlier, *Rule* 4:58–2 had changed in a manner that fundamentally shifted plaintiff's entitlement to its remedies: under the pre-amendment version of the *Rule*, plaintiff would have been entitled to an award of remedies, whereas plaintiff would not have qualified for relief under the post-amendment version of the *Rule*.

Both the trial court and the Appellate Division confronted this veritable "Catch–22:" plaintiff was barred from recovery under the post-amendment version of the *Rule* yet, given the accident of timing, plaintiff was procedurally barred from amending his offer of judgment consistent with the September 1, 2004 amendments to the *Rule*. Although the trial court recognized "the harshness of such a result" and lamented that the "strict application of the rule of retroactivity in this matter may be contrary to the interests of ultimate fairness[,]" it concluded that "under the controlling precedent of this State, [it] ha[d] no other choice than to bar [plaintiff] from recovery" under the amended offer of judgment rule. The

---

[7] *Rule* 4:58–1 also has been amended in the interim. At present, it contains two separate subsections. *See R.* 4:58–1(a) and (b) (eff. Sept. 1, 2006). However, the deadline for the tender of an offer of judgment—no later than twenty days before the actual trial date—remains unchanged. *See R.* 4:58–1(a).

Appellate Division echoed that concern, but similarly offered plaintiff no relief.

Circumstances as unique as those presented here—where a party fully complies with the letter and spirit of a *Rule* but the *Rule* changes after the party can no longer alter or modify its position to comply with the amended *Rule*—animate the more flexible approach *Rule* 1:1–2 embodies and weigh heavily in favor of relaxation. At its core, plaintiff's plea is that, once trial had started, his offer of judgment was fixed and could not be changed and, hence, the application of rules other than those under which the offer of judgment was made violates fundamental principles of fairness. In this limited instance, we agree. And, conversely, we see no detriment to the administration of justice arising from this limited and unique determination. Finally, we assign no prejudice to defendants by this finding. We are persuaded that, had the trial court advanced its decision by three weeks, or had the amendments to *Rule* 4:58–2 been deferred by an equal period, this controversy would not have arisen. In short, our finding means nothing more than defendants simply must abide by the rules as they existed when, well knowing the consequences, defendants elected not to accept plaintiff's offer of judgment. Further, our finding denies defendants nothing other than an unearned windfall arising solely from an accident of timing. We therefore conclude that plaintiff's entitlement to an award of remedies under the offer of judgment rule is to be gauged by the provisions of *Rule* 4:58–2 as it existed on the last day plaintiff could make a timely offer of judgment: twenty days before the trial started.

That said, we return to first principles to emphasize the following. *Rule* 1:1–2 is not meant as a safe harbor for the dilatory; its "catch-all" nature is not intended to serve as a cure-all. Proponents seeking relief under the relaxation provisions of *Rule* 1:1–2 bear a heavy burden, as we have made clear that relief under that *Rule* will be granted only sparingly and only after an appropriate examination and weighing of all relevant factors has

occurred. Few cases should qualify for such special relief; this is one of those rare cases.

## IV.

The judgment of the Appellate Division is reversed in part, and the cause is remanded to the Law Division for further proceedings consistent with the unaffected portions of the judgment of the Appellate Division, as further modified by the principles to which we have adverted.

*For reversal in part/remandment*—Chief Justice RABNER and Justices LONG, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.