**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2057-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RHUDELL C. CRUZ-SNELLING,
a/k/a RHUDY CRUZ, RHODELL
SNELLING, RHUDELL CHARLES
CRUZ-SNELLING, RHUDY C.
CRUZ, RHUDELL C. CRUZ, and
RHODELL CRUZ,

    Defendant-Appellant.

_____

Submitted December 18, 2019 – Decided April 21, 2020

Before Judges Whipple, Gooden Brown, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-01-0005.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Alanna M. Jereb, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Rhudell C. Cruz-Snelling appeals from a November 21, 2017 judgment of conviction after a jury found him guilty of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) and fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2). We affirm.

Defendant raises the following issues on appeal:

> POINT I: THE STATE'S FAILURE TO COMPLY WITH [RULE] 3:13-3(b) REGARDING PRODUCING TRANSCRIPTS FOR ELECTRONICALLY RECORDED STATEMENTS WITHIN [THIRTY] DAYS OF TRIAL MANDATED THE EXCLUSION OF THE RECORDED JAIL CALLS.
>
> POINT II: THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE CHARGE OF RESISTING ARREST SHOULD HAVE BEEN GRANTED.
>
> POINT III: CERTAIN COMMENTS MADE BY THE PROSECUTOR DURING HIS SUMMATION [WERE] IMPROPER AND DEPRIVED DEFENDANT OF A FAIR TRIAL. (Not raised below).
>
> POINT IV: THE EXTENDED TERM SENTENCE OF FIFTEEN [] YEARS WITH SEVEN AND A HALF []

YEARS OF PAROLE INELIGIBILITY WAS MANIFESTLY EXCESSIVE AND SHOULD BE MODIFIED AND REDUCED. (Not raised below).

We discern the following facts from the record. In the early hours of October 2, 2016, Officer Jose Perez of the Jersey City Police Department received a report of "shots fired" at Sherman Avenue and Franklin Street. Perez and his partner, Officer Edwin Medina, went to the area where they spoke with a man who identified a white Mazda that had allegedly sped through a stop sign. The officers ordered the Mazda driver to shut off the vehicle and show his hands.

Perez and Medina both approached the Mazda. Perez went toward the passenger's side of the vehicle while Medina went towards the front. Perez, standing in front of the passenger door with his weapon drawn, said "Stop. Don't move. Stop. Don't move." Perez looked directly at the front passenger of the vehicle, who he later identified as defendant. Instead of stopping, the Mazda drove away. The officers gave chase. Medina radioed identifying information "over the air." Sergeant Crisant Bereguette observed a white vehicle drive down the street in the wrong direction and pull into a driveway where a man exited the vehicle and ran across the street towards the sidewalk. Bereguette used her flashlight to look inside the vehicle, and noticed a handgun, later identified as a black semi-automatic Smith & Wesson, on the floorboard of the passenger's

side. Officer Nancy Rojas heard, over dispatch, the description of a male wanted in connection with the shots fired call and saw defendant, who matched the description, walking. Rojas stopped defendant for an investigation and noticed dirt marks and grass stains on his pants. Perez and Medina responded to Rojas' location, identified defendant as the man they were looking for and defendant was then taken into custody.

The police later executed a search warrant for the Mazda, recovering defendant's wallet from the front passenger's side of the vehicle, as well as a fully-loaded magazine, which contained nine-millimeter Winchester Luger rounds, for a Smith & Wesson handgun from the center console. Detective Joseph Chidichimo recovered two shell casings from the scene, one from a nine-millimeter Luger and another from a .380 Winchester. He also recovered surveillance video from buildings in the area showing four people walking south on Sherman Avenue away from Franklin Street. A silver revolver was recovered nearby with six spent casings inside its cylinder.

Co-defendant Jason Smith, the driver, pled guilty to third-degree eluding, N.J.S.A. 2C:29-2 and agreed to testify against his co-defendants after giving a statement. He testified that on October 1, 2016, between 11:00 a.m. and 2:00 p.m., defendant and Smith's sister, Holly Wippert, picked him up in the Mazda.

4

They drove Wippert to Manchester, where they dropped her off, and Smith then drove the Mazda, with defendant in the front passenger seat, to Bound Brook where they picked up co-defendant Saquan S. Peace.

Smith, defendant and Peace drove to Newark, where they drank alcohol. Then Smith drove to Jersey City with defendant, Peace, and two other individuals to meet "females . . . and then . . . go get another bottle of liquor. . . ." He eventually parked and waited as the four other occupants of the Mazda left to meet up with the women and "to go get the liquor." After five to ten minutes, the four ran back to the car, got in their original seats and told Smith to drive off as if they were in a rush. Smith testified that defendant had a black gun in his hand and he believed Peace had a big silver gun in his hand. Smith drove away from the scene with the others in the car as defendant told him where to drive. Eventually, Smith arrived at a stop sign and "a bunch of cops" appeared "out of nowhere" and a police officer, with his gun drawn, directed him to "turn off the car." Smith testified that defendant told him to "go." He drove until he crashed the vehicle, then ran and threw away his gray hoodie while running.

A-2057-17T2

Peace also gave a video-recorded statement to police. Peace reported he was in the Mazda with Smith, an individual known to him as "Big Boy,"[1] and someone named Johnny. Peace reported that Big Boy had a black gun in his hand. Peace explained that Big Boy was "beefing with someone." Peace denied getting out of the car. He stated the shooting occurred on the first time they "spun the block" and that on their third time coming around the police spotted them. He asserted that he told the other passengers he was "not going down for ya'll straps," the other passengers then threw their guns out the window, and when the car came to a stop, all the occupants jumped out of the car.

On January 10, 2017, defendant was indicted for second-degree unlawful possession of a weapon, handgun, without a permit, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose N.J.S.A. 2C:39-4(a)(1); third-degree aggravated assault against a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a); fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2); and fourth-degree criminal mischief N.J.S.A. 2C:17-3(a)(1).[2]

---

[1] The State contends that defendant is Big Boy.

[2] The charges for third-degree aggravated assault against a law enforcement officer and fourth-degree criminal mischief were dismissed prior to trial. Co-defendants Peace and Smith were charged in the remaining counts of the indictment. Co-defendant Smith pleaded guilty to eluding N.J.S.A. 2C:29-2(b). Peace was tried with defendant.

On August 15, 2017, defendant, while incarcerated at the Hudson County Correctional Facility, called Wippert. During the call, defendant asked Wippert, "[w]hy . . . you always lying?" and "where did you get that gun from?" Defendant told Wippert that he learned the gun was registered to her grandfather and accused her of lying about her knowledge of the gun.

On September 28, 2017, the court granted the State's motion to admit co-defendant Peace's statements into evidence, subject to redactions. The trial began on October 4, and on October 13, 2017, the jury returned a guilty verdict finding defendant guilty of all counts. On October 19, the State moved for the imposition of an extended term which the court granted. On November 17, 2017, the trial judge sentenced defendant to an aggregate fifteen-year term of imprisonment with seven and one-half years of parole ineligibility.

This appeal followed.

On appeal, defendant argues the trial court erred by admitting his phone call to Wippert and denying his motion for judgment of acquittal. The defendant also argues comments made by the prosecutor in summation rose to the level of prosecutorial misconduct and the imposition of an extended sentence was unduly punitive and shocks the judicial conscience. We reject these arguments and affirm.

A-2057-17T2

Defendant argues his jail call to Wippert should be excluded because of the State's failure to comply with its obligation to provide discovery within the thirty-day timeframe of Rule 3:13-3(b)(1)(B). The State filed its notice of motion on September 15, and the defendant's trial commenced on October 3, 2017.

The trial court relaxed Rule 3:13-3, pursuant to Rule 1:1-2, because defense counsel was aware of the subject call as early as August 29, and the defense listened to the call on September 11, 2017. Moreover, defendant did not object to the State's motion to admit the call.

We "review . . . a trial court's discovery order [under] the abuse of discretion standard." State in Interest of A.B., 219 N.J. 542, 554 (2014) (citation omitted). "Thus, [we] should generally defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'" Ibid. (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). However, "[i]n construing the meaning of a statute, court rule, or case law, 'our review is de novo,'" and we owe no deference to the trial court's legal conclusions. Id. at 554-55.

Rule 3:13-3(b)(1)(B) provides, in pertinent part, that discovery includes:

> [R]ecords of statements or confessions, signed or unsigned, by the defendant or copies thereof, and a summary of any admissions or declarations against penal interest made by the defendant that are known to the prosecution but not recorded. The prosecutor also shall provide the defendant with transcripts of all electronically recorded statements or confessions by a date to be determined by the trial judge, except in no event later than [thirty] days before the trial date set at the pretrial conference.

The State has a "continuing duty to provide discovery pursuant to this rule." R. 3:13(f). Rule 3:13(f) vest in courts the ability to take remedial action when a party fails to comply with the rule. "A court's failure to take appropriate action to remedy a discovery violation can implicate the defendant's right to a fair trial." State v. Smith, 224 N.J. 36, 48 (2016) (citation omitted). That right to a fair trial requires a "'meaningful opportunity to present a complete defense.'" Ibid. (citation omitted).

Rule 1:1-2 allows that the rules "shall be construed to secure a just determination, simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Nonetheless, our Supreme Court has warned that the relaxation provision of Rule 1:1-2 should be sparingly resorted to as the rule is the exception rather than the norm. Ramagnola v. Gillespie, Inc., 194 N.J. 596, 604 (2008) (citations omitted).

Here, we discern no abuse of discretion in the relaxation of Rule 3:13-3(b) because defendant was not prejudiced by the State's technical noncompliance with this rule. The defendant was aware of the substance of the evidence and has not illustrated how the purported error prejudiced his "opportunity to present a complete defense."

We also reject defendant's argument the trial court erroneously denied his motion for a judgment of acquittal on the charge of resisting arrest. He asserts that when Perez approached and confronted the stopped Mazda none of the occupants of the vehicle were under arrest, and thus the State failed to prove all the essential elements of the resisting arrest offense beyond a reasonable doubt. The judge correctly denied the motion stating:

> [Regarding] [t]he issue of resisting[,] the [i]ndictment reads, preventing a law enforcement [officer] from making lawful arrests.
>
> I saw the video, I heard the testimony. Clearly there was an order to stop with the gun drawn, the car sped away. At that point in time, prior to the flight, there may not have been an attempt to arrest, but when they refused to obey the policeman's order and fled certainly they prevented a lawful arrest.

In order to be found guilty of fourth-degree resisting arrest, defendant must have "by flight, purposefully prevent[ed] or attempt[ed] to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a). "[A]

10

citizen's duty to submit [to an arrest] obtains when the restraint by the police officer is for any lawful purpose even if it does not amount to an arrest." State v. Brennan, 344 N.J. Super. 136, 145 (App. Div. 2001) (citations omitted). Based on the evidence presented at trial, a jury could have found defendant violated N.J.S.A. 2C:29-2(a)(2).

Defendant also asserts that certain comments made by the prosecutor during his summation deprived defendant of his right to a fair trial. Defendant did not object at trial to the following statements made by the prosecutor:

> As I said in the beginning of - - in my opening, [Smith is] not without sin. Right? He's not a saint here. He made a very stupid mistake by running from the police. But [Smith] took responsibility. He plead guilty. It's your turn to hold these people responsible for what they did.

Defendant argues the prosecutor's statement that "[i]t's your turn to hold these people responsible" impermissibly conveyed to the jury that it was their responsibility to find the defendant guilty.

"When a defendant fails to object to an error or raise an issue before the trial court, we review for plain error." State v. Ross, 229 N.J. 389, 407 (2017) (citing R. 2:10-2). "We may reverse on the basis of unchallenged error only if the error was 'clearly capable of producing an unjust result.'" Ibid. (quoting R.

2:10-2). Our Supreme Court has articulated the standard for review of alleged prosecutorial misconduct with respect to remarks in summation:

> An appellate court, in reviewing the trial record to determine whether the conduct of the prosecutor exceeded these bounds, must consider several factors, including whether "timely and proper objections" were raised, whether the offending remarks "were withdrawn promptly," and whether the trial court struck the remarks and provided appropriate instructions to the jury. Additionally, an appellate court will consider whether the offending remarks were prompted by comments in the summation of defense counsel. If, after completing such a review, it is apparent to the appellate court that the remarks were sufficiently egregious, a new trial is appropriate, even in the face of overwhelming evidence that a defendant may, in fact, be guilty. In contrast, if the prosecutorial remarks were not "so egregious that [they] deprived the defendant of a fair trial[,]" reversal is inappropriate.
>
> [State v. Smith, 212 N.J. 365, 403-04 (2012) (alterations in original) (citations omitted) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).]

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Frost, 158 N.J. at 82. However, they may not issue a "call to arms," asking the jury to "send a message" to the defendant and the public, since such statements could "mislead a jury as to its role and duty," State v. Hawk, 327 N.J. Super. 276, 282-83 (App. Div. 2000), and "improperly divert jurors' attention

from the facts of the case and intend to promote a sense of partnership with the jury that is incompatible with the jury's function." State v. Neal, 361 N.J. Super. 522, 537 (App. Div. 2003) (citations omitted).

The prosecutor's statement here was not an inappropriate call to arms. The prosecutor did not imply the jurors would violate their oaths if they failed to convict, see State v. Pennington, 119 N.J. 547, 576 (1990), nor did he suggest the jury had a societal duty to convict, Hawk, 327 N.J. Super. at 282. Considered in context, the prosecutor's comment did not cross the line and it did not amount to plain error in light of the substantial evidence of guilt. See State v. Feal, 194 N.J. 293, 312-13 (2008) (finding an improper prosecutorial statement was not plain error based on the evidence of guilt).

Finally, defendant argues the trial court's imposition of an extended term was unduly punitive. We review a judge's sentencing decision under an abuse of discretion standard. State v. Pierce, 188 N.J. 155, 169-70 (2006); State v. Roth, 95 N.J. 334, 363-64 (1984). When reviewing a judge's sentencing decision, we "may not substitute [our] judgment for that of the trial court. . . ." State v. Johnson, 118 N.J. 10, 15 (1990) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). However, we may review and modify a sentence when the judge's determination was "clearly mistaken." State v. Jabbour, 118 N.J. 1, 6 (1990)

(quoting State v. Jarbath, 114 N.J. 394, 401 (1989)).  However, in determining the propriety of a sentence, we must make sure that the sentencing guidelines have been met, that the findings on aggravating and mitigating factors are based upon "competent credible evidence in the record," and that the sentence is not "clearly unreasonable so as to shock the judicial conscience."  State v. Dalziel, 182 N.J. 494, 501(2005) (citing Roth, 95 N.J. at 364-65).

"New Jersey's Code of Criminal Justice . . . provides for ordinary sentences . . . as well as extended-term sentences that carry greater punishment for the same crime."  Pierce, 188 N.J. at 161 (citations omitted).  "The persistent offender statute, N.J.S.A. 2C:44-3(a), grants the sentencing court discretion to impose an extended sentence when the statutory prerequisites for an extended-term sentence are present."  Ibid.

We reject defendant's argument.  The trial court found, and defendant conceded, that he met the statutory pre-requisites of a persistent offender.  The court then found that aggravating factors three, risk of committing another offense; six, the nature and extent of defendant's criminal record; and nine, the need to deter defendant as well as others from violating the law, applied and the court also determined, and defendant conceded, that no mitigating factors were present in this case.

14

Addressing the extended term, the court again considered the aggravating and mitigating factors and noted defendant's criminal history included four indictable convictions, including unlawful possession of a firearm and another weapon. The court found defendant demonstrated a "flagrant disregard for the law and a clear indication that he will commit a future offense." In light of the weight afforded to the applied aggravating and the absence of any mitigating factors, we discern no abuse of the court's discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2057-17T2