**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3732-19

KAREN PFEIFFER and
STONE RIDGE
CONSULTANTS, LLC,

      Plaintiffs-Respondents,

v.

DOROTHY FUTRELL,

      Defendant-Appellant.

_____

Argued June 9, 2021 – Decided July 23, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000032-20.

Kenneth W. Thomas argued the cause for appellant (Lanza Law Firm, LLP, attorneys; Kenneth W. Thomas, of counsel and on the briefs).

Carmine LoFaro argued the cause for respondent (Lofaro & Reiser, LLP, attorneys; Eric D. Reiser and Carmine LoFaro, on the brief).

PER CURIAM

Defendant Dorothy Futrell appeals from Judge Robert J. Mega's May 22, 2020 amended order compelling her to sell a single-family home in Plainfield ("the property") to plaintiffs Karen Pfeiffer and Stone Ridge Consultants, LLC (Stone Ridge) in accordance with the terms of their contract for sale of real estate. We affirm.

I

On October 16, 2017, Bank of America (BOA) obtained a final judgment of foreclosure against Futrell in the amount of $59,443.92 pertaining to the property. A September 4, 2019 court order increased the final judgment to $77,314.92.

Prior to the scheduled sheriff's sale of the property on September 18, 2019, Futrell was contacted by a man named "Thom," who advised her that she could enter an arrangement with Pfeiffer that would enable her to remain in the property for a couple more years. After the three of them met, Futrell and Pfeiffer entered into a September 16, 2019 contract in which she agreed to sell the property to plaintiffs for $120,000. The next day, Futrell was successful in getting the motion judge to stay the sheriff's sale for sixty days because of the contract.

The November 14 closing did not take place because Futrell failed to appear. She then obtained a second order from the same motion judge, staying the sheriff's sale due to her representation that she needed more time to obtain a payoff statement from BOA, as required by the closing title company. The judge adjourned the sheriff's sale to January 8, 2020, on the condition that Futrell present evidence of a valid closing date. Unlike the first time Futrell obtained a stay, Pfeiffer appeared in court with Futrell for the motion.

Futrell seemingly was going through with the sale when she scheduled a municipal inspection and obtained a certificate of compliance needed to transfer title to the property. However, she failed to appear at the scheduled December 31, 2019 closing.

With the sheriff's sale scheduled on January 8, 2020, Futrell filed her third motion to stay—this time without Pfeiffer's knowledge—that day. She contended she needed additional time to refinance her mortgage. The same judge denied the motion, resulting in the property being sold that day at a sheriff's sale.

Futrell then asked Pfeiffer for a loan to redeem the BOA mortgage and reacquire ownership of the property. Pfeiffer agreed, loaning Futrell $89,104.71 on behalf of Stone Ridge, which she solely owned, for which Futrell signed a

3

promissory note along with a corresponding mortgage in favor of Stone Ridge. Under the note's terms, Futrell was required to repay the loan in full by January 24, 2020. On January 16, with Futrell's written authorization, Pfeiffer redeemed the BOA mortgage on Futrell's behalf with a cashier's check drawn on Stone Ridge's bank account.

The parties agreed to close on January 23, but it was rescheduled at Futrell's request to January 24. Again, Futrell failed to appear for the closing, and she did not repay the loan by January 24.

About three weeks later, plaintiff's counsel sent a notice of intention to accelerate the loan balance and foreclosure pursuant to the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53 to -68, declaring her in breach, and sent her a time of the essence notice demanding she appear at his office for the closing on March 3 at 12:00 p.m. Prior to the closing, plaintiffs rejected Futrell's counsel's proposal that if she closed, she would be allowed to live rent free at the property for a year. Again, Futrell failed to appear at the closing.

On March 25, plaintiffs filed a six-count verified complaint against Futrell, seeking specific performance on the parties' contract of sale and damages under the loan documents. In accordance with Rules 4:67-1(b) and -5, plaintiffs moved to proceed summarily and for final judgment on count one—

breach of contract and specific performance—and count four—breach of loan documents. Futrell opposed the motion but did not include her certification, instead relying only on her counsel's certification. Additionally, she filed an unverified answer and counterclaim. Despite being notified of these deficiencies four days prior to the motion's return date, Futrell did not cure them.

On May 22, Judge Mega, who did not decide any of Futrell's three motions to stay the sheriff's sale, granted plaintiff's motion to proceed summarily. In his oral ruling, the judge deemed the motions unopposed under Rules 1:4-7, 1:6-6, and 4:67-5, due to Futrell's unverified pleading and her attorney's certification being inadmissible hearsay, which was inadequate to establish contesting facts, and held that because Futrell breached the contract and loan documents, plaintiffs were entitled to judgment on counts one and four. The judge rejected Futrell's request to relax the court rules under Rule 1:1-2(a), citing her pattern of bad faith conduct in not closing and her failure to mail or email her certification and verification to the court prior to the motion's return date. The judge also rejected Futrell's predatory loan and fraud counterclaims, finding them to be disingenuous and without merit. In addition, the judge found that Futrell was judicially estopped from disavowing the contract of sale and loan on account of her prior bad faith actions including: her repeated failure to close,

her assertion of an inconsistent position before the foreclosure court that the contract was valid, and her use of the loan from plaintiffs to redeem her mortgage after her property was sold at the sheriff's sale.

The judge's order compelled Futrell to convey ownership of the property to plaintiffs pursuant to their contract of sale; entered judgment against Futrell under the loan documents in the amount of $90,789.16; and required Futrell to pay plaintiffs a $1000 per month use and occupancy charge for each month she remained at the property beyond the June 19, 2020 closing date. Later that day, the judge amended the order clarifying that Futrell's counterclaim and third-party complaint were dismissed with prejudice.

Futrell first argues that the judge should have relaxed the court rules and not dismissed with prejudice her unverified answer with a counterclaim and her third-party complaint. She maintains she was unable to sign her pleadings electronically, could not travel to her attorney's office because her purse and car keys were stolen, and her attorney declined to personally drive to her house to obtain her signature due to the COVID-19 pandemic. We are unpersuaded.

Rule 1:1-2 permits relaxation of our court rules, stating the rules "shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

Moreover, "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court" that is hearing the action "if adherence to it would result in an injustice." R. 1:1-2(a).

As recognized in Romagnola v. Gillespie, Inc., "Rule 1:1-2 is not meant as a safe harbor for the dilatory; its 'catch-all' nature is not intended to serve as a cure-all." 194 N.J. 596, 606 (2008). A party seeking relaxation of the rules "bear[s] a heavy burden." Ibid. "[R]elief under th[e] Rule will be granted only sparingly and only after an appropriate examination and weighing of all relevant factors has occurred." Id. at 606-07. There must be a showing of specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision" to provide relief. State v. Mitchell, 126 N.J. 565, 579 (1992).

Our review of the record convinces us that Judge Mega did not abuse his discretion by declining to relax the rules. See Schweizer v. MacPhee, 130 N.J. Super. 123, 126-27 (App. Div. 1974) ("Since [Rule 1:1-2] relaxation is discretionary with the trial judge . . . we have reviewed the matter to the end of examining the exercise of discretion below . . . ."). The judge correctly determined the facts did not warrant relaxation of the verification and certification rules, and that Futrell's claims and defenses had no merit, due to her bad faith conduct. The judge stated:

[A]t a minimum, the certification, any certifications or paperwork could have been sent in the mail, taken two days to get there, two days to get back, and it could have been e-mailed to the [c]ourt. So[,] I understand your position as an advocate and everything, but I, you know, I'm looking at [Futrell's] actions here as to what's been done since [BOA] first declared her in default, you know, back in 2016 and brought it all the way to the sheriff's sale, and there just seems to be a pattern here.

　　　. . . .

In the present matter, plaintiffs have sought to obtain specific performance on a contract. There are no issues of material fact. This . . . matter may proceed summarily. It's very clear to the [c]ourt that the rules need to be followed. There's no reason to relax them. Counsel brings up a good point where he talks about unclean hands, and he is . . . actually doing equity.

This is a case where actions really do speak louder than words. Because if we look at the recitation of facts that . . . [are in] the record, the most . . . glaring fact is this property was lost at [a] sheriff's sale. But for this loan, had this loan not come along because [Pfeiffer and Stone Ridge] [were] loaning the money so [they] could complete a purchase, and . . . the parties had been previously negotiating, [the property] was lost at [a] sheriff's sale. [Futrell] was out of her house. This loan only came in as—for lack of a better term, a bridge loan, to get the property back under a contract so it could be closed upon and the matter proceed accordingly.

Not only did the judge determine that the facts did not warrant relaxation of the verification and certification rules, but he also found that Futrell's claims

8

and defenses had no merit, due to her bad faith conduct. We see no basis to upset that determination.

Futrell next contends the order to proceed summarily deprived her of discovery that could support her claims and defenses, thereby denying her due process rights, H.E.S. v. J.C.S., 175 N.J. 309, 321-22 (2003), and the opportunity to have all issues resolved during a trial on the merits. She argues her loan from plaintiffs was predatory because there was no conceivable way that she could have repaid a $89,000 loan she signed while hospitalized, within a couple of weeks. Futrell maintains plaintiffs engaged in equity stripping,[1] resulting in both the contract for the sale of the property and the loan contract being unconscionable and unenforceable along with being violative of New Jersey's Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -20. Citing Cox v. Sears, Roebuck & Co., 138 N.J. 2, 23 (1994), she contends plaintiffs' loan constituted unconscionable commercial practices under the CFA and that debt can constitute an ascertainable loss under the CFA, "because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the [CFA]." Futrell

---

[1] Equity stripping involves "lending based on the value of the asset securing the loan rather than a borrower's ability to repay . . . ." Hargraves v. Capital City Mortg. Corp., 140 F. Supp. 2d 7, 20 (D.D.C. 2000). The lender profits through obtaining the property when the borrower defaults rather than through loan payments. Id. at 20-21.

A-3732-19

points out that she requested rescission or reformation of the contracts at issue because equity may allow recission in a contract under certain circumstances, unconscionability being one of them. Conduit & Foundation Corp. v. City of Atl. City, 2 N.J. Super. 433, 439 (Ch. Div. 1949). Again, we are unpersuaded.

Futrell's contention that her due process rights were violated by summarily granting judgment to plaintiffs is unsupported by the law. In accordance with Rules 4:67-1(a), -2(a), and -5, a trial court may resolve a real estate contract dispute in a summary proceeding through the filing of an order to show cause supported by a verified complaint. The court conducts an initial hearing and if "satisfied with the sufficiency of the application, [it] shall order the defendant to show cause why final judgment should not be rendered for the relief sought." R. 4:67-2(a). "If no objection is made by any party, or the defendant[] [has] defaulted in the action, or the affidavits show palpably that there is no genuine issue as to any material fact, the court may try the action on the pleadings and affidavits and render final judgment thereon." R. 4:67-5. At the end of the proceedings, the court must make findings of fact. MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 551 (App. Div. 2005).

Futrell's reliance on H.E.S. is misguided, as there, the defendant was served the complaint less than twenty-four hours before the hearing and the trial

A-3732-19

court refused to grant an adjournment even though the plaintiff alleged an incident that was not contained in the complaint. 175 N.J. at 321. Quite differently, Futrell was given four days' notice and did request an adjournment. Moreover, she failed to comply with Rule 1:6-6 by providing "affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify and which may have annexed thereto certified copies of all papers or parts thereof referred to therein."

Since this was a summary action and not a summary judgment motion, there were no favorable inferences to the opposing party; thus, Futrell's reliance on entitlement to favorable inference is mistaken. See O'Connell v. N.J. Mfrs. Ins. Co., 306 N.J. Super. 166, 172-73 (App. Div. 1997) (applying a substantial-credible-evidence standard in reviewing a decision from a summary action). As noted, the judge here properly analyzed Rules 1:4-7, 1:6-6, and 4:67-5, granting summary disposition in plaintiffs' favor based on the facts presented in the verified complaint and the lack of opposition given Futrell's unverified answer and uncertified opposition to plaintiffs' summary motion.

In sum, Futrell was given an opportunity by plaintiffs to pay off the foreclosure judgment on the property and make a profit by: first, selling the property to Pfeiffer through a contract of sale prior to a sheriff's sale; or, second,

11

after Futrell failed to close and the property was sold at a sheriff's sale, receiving a loan from Stone Ridge to redeem the property so that Futrell could transfer title to plaintiffs, which she refused to do. Futrell, however, reneged on her agreements and failed to adhere to our pleading requirements. Accordingly, Judge Mega's order is unassailable.

To the extent we have not addressed any of Futrell's remaining arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3732-19