Colt v New Jersey Tr. Corp. (2022 NY Slip Op 03343)





Colt v New Jersey Tr. Corp.


2022 NY Slip Op 03343


Decided on May 24, 2022


Appellate Division, First Department


Oing, J. 



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 24, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
David Friedman Jeffrey K. Oing Peter H. Moulton Tanya R. Kennedy


Index No. 158309/17 Appeal No. 14967 Case No. 2021-01180 

[*1]Jeffrey Colt, et al., Plaintiffs-Respondents,
v
New Jersey Transit Corporation, et al., Defendants-Appellants.



Defendants appeal from the order of the Supreme Court, New York County (Adam Silvera, J.), entered October 6, 2020, which denied their motion to dismiss the action.




DeCotiis, FitzPatrick, Cole & Giblin, LLP, New City (John A. Stone of counsel), for appellants.
Sullivan Papain Block McGrath Coffinas & Cannavo, P.C., New York (Brian J. Shoot and Eric K. Schwarz of counsel), for respondents.



OING, J. 


The constitutional dilemma concerning the doctrine of sovereign immunity continues unabated (see Taylor v New Jersey Tr. Corp., 199 AD3d 540 [1st Dept 2021]; Fetahu v New Jersey Tr. Corp., 197 AD3d 1065 [1st Dept 2021]; Henry v New Jersey Tr. Corp., 195 AD3d 444 [1st Dept 2021]; Belfand v Petosa, 196 AD3d 60 [1st Dept 2021]). Like the current action, each of the cited cases involves tortious conduct perpetrated by defendant New Jersey Transit Corporation (NJT) and its employees in the operation of its commuter buses in New York City. In this action, on February 9, 2017, defendant NJT employee Ana Hernandez, operating a NJT bus on West 40th Street and Dyre Avenue, struck plaintiff Jeffrey Colt, a pedestrian crossing Dyre Avenue in the crosswalk with the pedestrian traffic signal in his favor. According to Hernandez's EBT testimony, the accident occurred when she was driving from the main platform in the Port Authority Bus Terminal in New York City, where she had just discharged her passengers, to the basement of the Terminal to pick up passengers for a return trip to New Jersey.
Plaintiff and his wife, Betsy Tsai, suing derivatively, commenced this action against NJT and Hernandez with the filing of their summons and complaint on September 18, 2017. NJT eventually served its answer, on January 5, 2018, which asserted the following affirmative defenses: "Plaintiffs' recovery, and/or claims in this litigation [] against Defendants is barred by lack of jurisdiction over NJT," "Plaintiffs' recovery should be barred as this Court lacks jurisdiction," and "Defendants are immune from suit."
In July 2020, almost three years after plaintiffs commenced the action, before the completion of discovery, and after the expiration of the New Jersey statute of limitations,[FN1] NJT, relying on the recent United States Supreme Court decision in Franchise Tax Bd. of Cal. v Hyatt (587 US __, 139 S Ct 1485 [2019]), moved to dismiss the action on the ground that it was immune from suit in New York under the doctrine of sovereign immunity. In opposition, plaintiffs made several arguments: the accident occurred in New York City, NJT was not an arm of the State so as to be entitled to the sovereign immunity defense, NJT consented to suit, plaintiffs could not have commenced their action in New Jersey because New Jersey court rules require their action to be venued in "the [New Jersey] county in which the cause of action arose" (New Jersey Rules of Court 4:3-2), and NJT should be estopped from contending that it was immune from suit because it had vigorously litigated the case [*2]for nearly three years. In denying the motion, Supreme Court noted that defendants had taken "three years to raise a jurisdictionally based objection" and reasoned that, "[t]o hold NJT immune from suit for negligence in motor vehicle accidents in New York would constitute a miscarriage of justice to the victims of accidents involving NJT vehicles, which operate in New York on a daily basis."
We have previously held that NJT is an arm of the State of New Jersey and that, as such, it is entitled to invoke the doctrine of sovereign immunity (see Fetahu, 197 AD3d at 1065, citing Karns v Shanahan, 879 F3d 504, 512-519 [3d Cir 2018]; see also Muhammad v New Jersey Tr., 176 NJ 185, 194, 821 A2d 1148, 1153 [2003] [NJT is a public entity under the New Jersey Tort Claims Act]). We have also held that its employees sued in their official capacity in which NJT would be vicariously liable for their negligence are entitled to avail themselves of the doctrine (see Belfand, 196 AD3d at 63 n 2, citing Karns, 879 F3d at 519 n 5; see also NJ Stat Ann § 59:2-2[a] [under the New Jersey Tort Claims Act, "[a] public entity is liable for injury proximately caused by an act or omission of [an employee of the entity] within the scope of his employment"]). We have further held that New Jersey's consent to suit within its borders under its Tort Claims Act is not an express consent to suit in New York or any other sister state (see Belfand, 196 AD3d at 69). Further, unlike Taylor, Fetahu, Henry and Belfand, in which NJT never asserted an immunity-based defense, in this case NJT pleaded such a defense in varying forms in its answer. Plainly, these defenses had to include the sovereign immunity defense, because it had been in existence since 1979 (see Belfand, 196 AD3d at 72, citing Nevada v Hall, 440 US 410 [1979]). As we noted in Belfand, the defense was dramatically altered by Hyatt, but it did not have its genesis in that decision (id. ["The Hyatt Court dramatically altered the sovereign immunity analysis by moving the decision as to whether sovereign immunity should be honored from the forum state, guided by principles of comity, to the sister state being sued, which will decide, as a matter of discretion, whether to consent to the forum state's jurisdiction"]). These threshold findings entitle NJT to seek dismissal of this action based on the sovereign immunity defense. The final hurdle that NJT must overcome is whether it expressly and unambiguously waived its sovereign immunity defense (id. at 73).
Under the procedural circumstances of this action, NJT did not undertake a litigation strategy that could be deemed an express, voluntary waiver of this defense (see Belfand, 196 AD3d at 70). Although three years had elapsed since the filing of the complaint, discovery in this action had not been completed, the note of issue had not been filed, plaintiffs' motion for summary judgment had not been decided, no pretrial conference or trial date had been scheduled, and this action [*3]was never tried. Under these circumstances, NJT did not expressly and unambiguously waive the sovereign immunity defense. This finding, however, does not end the inquiry.[FN2] Rather than making a clear pronouncement on sovereign immunity, unlike the dissent's invocation of the Supremacy Clause of the US Constitution to justify embracing Hyatt, we see unresolved issues (see Belfand v Petosa, 196 AD3d 60).
Plaintiffs argue that they could not have commenced their action in New Jersey under New Jersey law. "[We] could not have brought suit in New Jersey even if [we] had wanted to do so inasmuch as New Jersey law requires that suit against a municipal corporation be commenced in the county in which the cause of action arose (. . . , citing NJSA § 4:3-2.)" Plaintiffs' straightforward legal argument requires no elaboration. NJT does not challenge this assertion in its reply brief, or otherwise address it, merely arguing that the venue rule should not be deemed as consent to suit in New York.
There can be no dispute that NJT is subject to a negligence suit akin to this action in the courts of New Jersey under the state's Tort Claims Act (see Stergios v New Jersey Tr. Corp., 2017 WL 3861375, 2017 NJ Super Unpub LEXIS 2214 [NJ App Div 2017]). That said, New Jersey's Tort Claims Act provides that "[t]ort claims under this act shall be heard by a judge sitting without a jury or a judge and jury where appropriate demand therefor is made in accordance with the rules governing the courts of the State of New Jersey" (NJ Stat Ann § 59:9-1). New Jersey Court Rule 4:3-2(a)(2) (Venue in the Superior Court) provides that "[v]enue shall be laid by the plaintiff in Superior Court actions as follows: . . . actions not affecting real property which are brought by or against municipal corporations, counties, public agencies or officials, in the county in which the cause of action arose." The import of this statute and court rule is clear: Although their negligence action is the kind permitted under the New Jersey Tort Claims Act, plaintiffs cannot commence an action in New Jersey because the cause of action arose outside its borders.
The dissent does not dispute that plaintiffs are foreclosed from suing in New Jersey. Instead, the dissent relies on New Jersey Court Rule 1:1-2(a), which provides that, "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." Based on this discretionary principle, the dissent suggests that there is no doubt that New Jersey courts would relax or dispense with the venue requirement in order to sue NJT in a New Jersey county convenient to the latter should NJT object to the venue of the action. We are not as confident of such an outcome.
As to Rule 1:1-2(a), it is clear that there must be a pending action in a New Jersey court for venue to be "relaxed" or "dispensed with." The problem in our case is that plaintiffs have nowhere to commence [*4]their action in New Jersey, which renders the rule meaningless. We believe that NJT would vigorously object to any litigation in New Jersey for injuries arising outside of New Jersey for three reasons. First, NJT could eliminate this issue by simply consenting to suit in New Jersey courts for injuries sustained in New York, as it has already done under the New Jersey Tort Claims Act for injuries occurring within the state. Its litigation conduct and strategy in this action and in Taylor, Fetahu, Henry and Belfand demonstrates that it will not do so. Second, New Jersey courts have held that equitable principles and an interest of justice analysis apply to determine whether a defendant is entitled to the dismissal of a New Jersey action based on an expired New Jersey statute of limitations when the action, timely filed in another state, is dismissed not on the merits (see Mitzner v West Ridgelawn Cemetery, Inc., 311 NJ Super 233, 709 A2d 825 [App Div 1998], relying on Galligan v Westfield Centre Serv., Inc., 82 NJ 188, 412 A2d 122 [1980]). Thus, NJT's reliance on a defense based on the statute of limitations in a New Jersey action would be questionable. Third, if plaintiffs were actually permitted to sue NJT in New Jersey state courts, NJT would be subject to a heightened standard of care consistent with the New Jersey Tort Claims Act (see Maison v New Jersey Tr. Corp., 245 NJ 270, 235 A3d 536 [2021]), whereas in New York it would be subject to the standard of reasonable care (see Bethel v New York City Tr. Auth., 92 NY2d 348 [1998]).
The Hyatt Court had this issue before it. The California state defendants were immune from liability in their state but did not have such immunity in Nevada (see Hyatt, 139 S Ct at 1491). The Hyatt Court did not address the dilemma of permitting California to have the action dismissed in Nevada based on the sovereign immunity defense and California's immunity from suit, which would foreclose plaintiffs from suing defendants in California, essentially denying plaintiffs a forum to seek redress for the tortious conduct by California state actors. Instead, the Hyatt Court focused on case-specific costs to support its reasoning:
"As to the fourth factor, we acknowledge that some plaintiffs, such as Hyatt, have relied on Hall by suing sovereign States. Because of our decision to overrule Hall, Hyatt unfortunately will suffer the loss of two decades of litigation expenses and a final judgment against the Board for its egregious conduct. But in virtually every case that overrules a controlling precedent, the party relying on that precedent will incur the loss of litigation expenses and a favorable decision below. Those case-specific costs are not among the reliance interests that would persuade us to adhere to an incorrect resolution of an important constitutional question" (Hyatt, 139 S Ct at 1499).
Our issue does not implicate the "case-specific costs" that the Hyatt Court found an insufficient basis for adhering to an [*5]incorrect resolution of a constitutional question. While this Court, as aptly noted by the dissent, does not face the dilemma of overruling our own precedent, the "case-specific costs" reasoning obviously cannot be used to resolve our issue — pitting the sovereign immunity defense against an individual's fundamental right derived from the common law to be able to seek redress in a judicial forum for injuries inflicted by a tortfeasor (see Missouri Pac. Ry. Co. v Humes, 115 US 512, 521 ["It is the duty of every state to provide, in the administration of justice, for the redress of private wrongs"]; Battalla v State of New York, 10 NY2d 237, 240 [1961] ["It is fundamental to our common-law system that one may seek redress for every substantial wrong," and "a wrong-doer is responsible for the natural and proximate consequences of his misconduct; and what are such consequences must generally be left for the determination of the jury"]). Unlike the Hyatt Court, we decline to ignore this consequential dilemma (see Belfand, 196 AD3d at 70 [the issue of what constitutes a waiver of the sovereign immunity defense is ripe for resolution]). We frame the issue in its simplest form: Should we dismiss a personal injury action on the ground of sovereign immunity when the action cannot be commenced in the sovereign's own courts because the injury arose outside of the sovereign's borders?
We resolve this issue by analogizing it to the legal framework for the forum non conveniens doctrine.[FN3] Among the factors to consider in determining whether to dismiss an action under this doctrine, with no single factor controlling, are the burden on New York courts, the potential hardship to the defendant, the availability of an alternate forum in which the plaintiff may bring suit, the residency of the parties, the forum in which the cause of action arose, and the extent to which the plaintiff's interests may otherwise be properly served by pursing the claim in New York (Rabinowitz v Devereux Connecticut Glenholme, 69 AD3d 485 [1st Dept 2010]).
We find that weighing these factors in resolving our issue is sound. NJT would not be prejudiced, given that it waited three years to move to dismiss on the ground of sovereign immunity. Nor would it be burdened in defending this action in our courts, given that all the relevant witnesses and evidence are in New York, where the accident took place, and it has participated in three years' worth of discovery. Indeed, NJT has participated in discovery in many other actions against it in New York (see e.g. Taylor, 199 AD3d 540; Fetahu, 197 AD3d 1065; Henry, 195 AD3d 444; Belfand, 196 AD3d 60). Further, the ability to commence a negligence action against NJT in New Jersey state courts is dependent solely on the fortuitousness of where the accident occurs. Plaintiffs cannot seek redress for NJT's tortious conduct in New York state courts under the doctrine of sovereign immunity and are precluded from suing in New Jersey state courts merely because [*6]the cause of action did not arise in that state (see Piper Aircraft Co. v Reyno, 454 US 235, 254 n 22 [1981] ["dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute"]). Thus, our plaintiffs and other similarly situated plaintiffs are without a judicial forum.[FN4] This absurd result cannot be jurisprudentially justified. We hold that under these circumstances the dismissal of this action against NJT in the absence of an available judicial forum in New Jersey because the injury occurred in New York is an affront to our sense of justice and cannot be countenanced.
Accordingly, the order of the Supreme Court, New York County (Adam Silvera, J.), entered October 6, 2020, which denied defendants' motion to dismiss the action, should be affirmed, without costs.
All concur except Friedman, J. and Moulton, J. who dissent in an Opinion by Friedman, J.



FRIEDMAN, J. (dissenting):
 

This appeal presents the question of whether an arm of the State of New Jersey may be sued in the courts of New York, upon a tort cause of action that arose in New York, in the absence (as all members of this bench agree) of any waiver by New Jersey of its sovereign immunity from being sued in the courts of another state.[FN5] According to the majority, the presentation of the foregoing question upon this appeal represents an "unabated" continuation of "[t]he constitutional dilemma concerning the doctrine of sovereign immunity." I am surprised by the majority's characterization of the question presented by this appeal as a "constitutional dilemma," because, less than a year ago, this Court acknowledged that a 2019 decision of the United States Supreme Court (Franchise Tax Bd. of Cal. v Hyatt, 587 US __, 139 S Ct 1485 [2019]) had "dramatically altered" the prior jurisprudence of state sovereign immunity by holding that "the US Constitution does not permit a nonconsenting state to be sued in another state's court" (Belfand v Petosa, 196 AD3d 60, 66-67 [1st Dept 2021] [Oing, J.]).[FN6] Although we ultimately held that the sovereign immunity defense had been waived in Belfand (as it has not been waived in this case), our Belfand decision expressly recognized that this Court was bound by the "constitutional framework" that the Supreme Court had established in Hyatt (196 AD3d at 67).
Today, less than a year after Belfand was decided, the majority simply walks away from that decision's straightforward analysis of the "constitutional framework" within which sovereign immunity questions must be decided, announcing that Hyatt is binding only if the suit could have been brought in the defendant state's own courts.[FN7] In effect, the majority declares that the doctrine of sovereign immunity and the Hyatt decision are dead letters, since (as the majority would have it) a state that has not consented to be sued on a claim in its own courts (as the majority wrongly believes to be the case here) somehow becomes subject to suit [*7]in the courts of the sister state in which the claim arose, even if the first state has not consented to be sued in the sister state's courts.
The majority seizes upon a one-sentence assertion in the fact section of plaintiffs' appellate brief, to the effect that the New Jersey court rule governing venue, although without jurisdictional effect (as more fully discussed below), somehow would have prevented plaintiffs from bringing this action against a New Jersey state entity in the courts of the State of New Jersey, simply because the claim arose from an incident that occurred across the Hudson River in New York. Notably, plaintiffs themselves do not argue in their brief that their strange interpretation of New Jersey law (unsupported by a single case citation, either by plaintiffs or by the majority), even if correct, would support disregarding an otherwise valid assertion of sovereign immunity from suit in the courts of New York, which, as previously discussed, is a right of constitutional dimension under Hyatt.[FN8] The majority, while rejecting plaintiffs' actual appellate arguments (that the present defendants do not have standing to invoke New Jersey's sovereign immunity and, in the alternative, that any sovereign immunity defense has been waived by defendants' conduct in this litigation), accepts at face value plaintiffs' throw-away, conclusory, and erroneous assertion that a non-jurisdictional state venue rule would have prevented this action from being maintained in New Jersey, and then devises a theory that such a circumstance somehow would render the Supreme Court's Hyatt holding inoperative. The majority's reasoning cannot bear scrutiny.
At this point, it may be in order to review the crucial points on which the majority and I agree. The majority acknowledges that New Jersey Transit has standing to assert the sovereign immunity of the State of New Jersey as an affirmative defense in this personal injury action. The majority further acknowledges that New Jersey Transit's immunity from suit in the courts of the State of New York has not been waived either by the New Jersey Tort Claims Act (NJSA 59:1-1 et seq.), which generally waives the state's sovereign immunity from tort liability under the doctrine of respondeat superior (see NJSA 59:2-2[a]), or by New Jersey Transit's conduct of its defense in this action, in which it raised in its answer the affirmative defense of "immun[ity] from suit," as well as two affirmative defenses asserting a lack of "jurisdiction."[FN9] Finally, the majority acknowledges, as it must, that only three years ago, the United States Supreme Court held in Hyatt, as a matter of federal constitutional law, that a nonconsenting state cannot be sued in the courts of another state (see Hyatt, 139 S Ct at 1490 [2019] ["the Constitution (does not) permit() a State to be sued by a private party without its consent in the courts of a different State"]; id. at 1498 ["The Constitution implicitly strips States of any power they once [*8]had to refuse each other sovereign immunity . . . . Interstate immunity, in other words, is implied as an essential component of federalism"] [internal quotation marks omitted]).[FN10]
Having made the foregoing concessions, the majority cannot come up with a persuasive rationale for its refusal to follow Hyatt. Even if the majority were correct in its reading of New Jersey's law of venue (which it is not), the majority fails to explain why it is New Jersey Transit's immunity from suit in New York under the United States Constitution, rather than the New Jersey court rule governing venue for lawsuits within the New Jersey court system, that should give way to plaintiffs' common-law right to a forum in which to seek a remedy. Apparently, in the majority's jurisprudence, both the New York common law and the New Jersey venue rule take precedence over the United States Constitution. Their argument runs athwart the Supremacy Clause of the United States Constitution (US Constitution, article VI, clause 2 ["This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"]).
Moreover, the premise of the majority's position seems to be that the State of New Jersey is legally obligated (under which body of law is not clear) to consent to suits against itself and its instrumentalities (such as New Jersey Transit) seeking redress for the torts of its employees in some jurisdiction — if not in New Jersey, then in the state in which the cause of action arose. This completely misconceives the nature of the doctrine of sovereign immunity, under which "[a] State and its governmental agencies are not subject to suit without the consent of the State" (Restatement [Second] of Torts § 895B [1979]) — meaning that, if consent is not given, the state and its agencies simply cannot be sued (see Alden v Maine, 527 US 706, 713 [1999] ["the States' immunity from suit is a fundamental aspect of sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention (of 1787) or certain constitutional Amendments"];[FN11] American Dock & Improvement Co. v Trustees for Support of Public Schools, 32 NJ Eq 428, 433-434 [NJ Ch 1880] ["It is a rule of universal law that a sovereign cannot, without his consent, be sued in his own courts"]; Lodor v Baker, Arnold & Co., 39 NJL 49, 50 [NJ 1876] ["(I)t requires no constitutional provision to shield the state from suits by its own citizens, or by the citizens of another state. It enjoys this immunity as one of the essential attributes of sovereignty, it being an established principle of jurisprudence . . . that the sovereign cannot be sued in its own courts without its consent"]). "The nearest approach to [complete immunity from tort liability] is . . . the immunity of the state governments, which, except as the state may by [*9]legislation have consented to suit on the claim, is still recognized as complete" (Restatement [Second] of Torts, ch 45A, Introductory Note). Indeed, for the first century and a half of American independence, "exemption of the government . . . from liability in tort . . . [remained] an apparent axiom of American law" (Edwin M. Borchard, Governmental Responsibility in Tort, 36 Yale L. J. 1, 39-40 [1926]).[FN12] Thus, even if it were true (as the majority incorrectly believes) that New Jersey has not consented to suits against itself and its instrumentalities in its own courts upon causes of action arising outside of that state, it would not follow that New Jersey Transit could be required to submit to the instant suit in New York.
But the premise of the majority's position — that an action against New Jersey Transit based on a personal injury claim arising in New York could not have been maintained in New Jersey because of the applicable New Jersey venue rule — is wrong.[FN13] To be sure, the rule in question provides that venue for "[Superior Court] actions not affecting real property which are brought by or against municipal corporations, counties, public agencies or officials" shall be laid "in the county in which the cause of action arose" (R. 4:3-2[a][2]). In this case, where the cause of action arose in New York (where the accident occurred), no New Jersey Superior Court is available "in the county in which the cause of action arose." What the majority overlooks, however, is that venue is not a jurisdictional matter under New Jersey law; if a defendant objects to venue, its remedy is to move for a change of venue, not for dismissal, and the objection to venue is waived if it is not timely asserted (New Jersey Rules of Court R. 4:3-3[b]; see Ciaglia v Ciaglia, 106 NJL 479, 479, 148 A 761, 761 [NJ Ct E & A 1930] [improper venue "was not a ground for nonsuit," and if defendants had an objection to venue, "they should have applied to the court for a change"]; Charles Cerlan, Inc. v Woodbridge Ford, 197 NJ Super 104, 107-108, 484 A2d 68, 69-70 [NJ Super 1984] ["The Superior Court has original general jurisdiction throughout the State in all causes," and "the course to be followed by a party challenging the venue . . . is not to seek a dismissal of the suit, but to seek a change of venue"]; Blackford v Lehigh Val. R. Co., 53 NJL 56, 57, 20 A 735, 736 [NJ Sup Ct 1890] ["an error (in laying venue) did not deprive the supreme court of jurisdiction"]).
The majority also overlooks a fundamental and overarching principle of New Jersey procedural jurisprudence, specifically, the principle embodied in the second sentence of New Jersey Rules of Court R. 1:1-2(a): "Unless otherwise stated, any rule [of the New Jersey Court Rules] may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice" (emphasis added). Although the judicial power under R. 1:1-2(a) to relax or dispense with a rule is to be resorted [*10]to "sparingly" (Romagnola v Gillespie, Inc., 194 NJ 596, 606, 947 A2d 646, 652 [NJ 2008]), New Jersey courts do not hesitate to exercise that power where the interest of justice so demands (see Robertelli v New Jersey Off. of Attorney Ethics, 224 NJ 470, 483, 134 A3d 963, 970 [NJ 2016]; Romagnola, 194 NJ at 606, 947 A2d at 652; State v Cummings, 321 NJ Super 154, 168, 728 A2d 307, 314 [NJ App Div 1999] ["Where there is a true injustice, R. 1:1-2 is available to correct it"], cert denied 162 NJ 199, 743 A2d 852 [1999]). It has been recognized that, upon a proper showing, ordinarily applicable rules of venue may be "relaxed or dispensed with" pursuant to R. 1:1-2(a) (see Diodato v Camden County Park Commn., 136 NJ Super 324, 327-328, 346 A2d 100, 102 [NJ App Div 1975], citing Rossbach v Evening News Pub. Co., 3 NJ Super 143, 65 A2d 634 [NJ App Div 1949]).
The majority appears to believe that, if plaintiffs had brought this action in New Jersey Superior Court, New Jersey Transit could have successfully moved to dismiss on the ground that, because the cause of action did not arise in any county of New Jersey, venue would not have been proper anywhere in New Jersey. I have no doubt that, in the situation posited by the majority, the New Jersey courts would have "relaxed or dispensed with" (R. 1:1-2[a]) the ordinarily applicable venue rules to allow plaintiffs to sue New Jersey Transit in a New Jersey county convenient to the latter. Plainly, a serious injustice to plaintiffs would have resulted if adhering to the ordinarily applicable venue rule would have made it impossible for them to sue New Jersey Transit in the latter's home state, in which any defense of sovereign immunity as to an action of this kind has been expressly and unambiguously waived by the New Jersey Legislature.[FN14] The New Jersey venue rule for actions against public entities was intended to serve "the convenience of public bodies and officials" (Fine v Rutgers, State Univ. of N.J., 163 NJ 464, 472, 750 A2d 68, 72 [2000] [internal quotation marks omitted], quoting Sinderbrand v Schuster, 170 NJ Super 506, 511, 406 A2d 1344, 1346 [NJ Super 1979]), not to make it impossible for injured persons to sue New Jersey public entities in the courts of New Jersey upon ordinary tort claims that happen to have arisen outside New Jersey's borders.
The majority's arguments against the foregoing analysis of New Jersey law fall far short of being persuasive. Particularly weak is the majority's claim that, because of the rule placing venue of actions against public entities "in the county in which the cause of action arose" (R. 4:3-2[a][2]), plaintiffs "ha[d] nowhere to commence their action in New Jersey" and therefore could not have taken advantage of the relaxation provision of R. 1:1-2(a). The majority overlooks that, as previously explained, venue is not a jurisdictional matter in New Jersey, the Superior Court is a tribunal of statewide jurisdiction, and an objection to venue is waived if not timely [*11]asserted. Thus, plaintiffs could have brought this action in a New Jersey county reasonably convenient to both sides, perhaps Essex County, directly across the Hudson from New York City, where New Jersey Transit's Newark headquarters are located (see https://www.njtransit.com/our-agency/about-us, retrieved April 28, 2022).[FN15] The majority offers no substantial reason to believe that, in the event New Jersey Transit had objected to being sued in whatever New Jersey county plaintiffs chose, the Superior Court would have responded by dismissing the case, notwithstanding the availability of relief under R. 1:1-2(a), a prognostication for which the majority provides zero case law support. The majority's speculation that New Jersey Transit would have sought the dismissal of an action brought against it by plaintiffs in New Jersey is beside the point, as the question is how the Superior Court would have acted on such an application.[FN16]
For the foregoing reasons, I believe that the majority is flatly wrong in stating that "plaintiffs cannot commence an action in New Jersey because the cause of action arose outside its borders." However, as previously discussed, even if the majority were correct in believing that this action could not have been maintained in New Jersey, that would have no bearing on this Court's duty to honor New Jersey Transit's assertion of its sovereign immunity defense under the United States Constitution, as authoritatively construed by the United States Supreme Court in Hyatt. In fact, as the majority notes, the claim in Hyatt could not have been maintained in the home state of the defendant (the Franchise Tax Board of California) because California had enacted a statute "immunizing the Board from liability for all injuries caused by its tax collection" (139 S Ct at 1491). Upon an earlier appeal, the United States Supreme Court had upheld the decision of the Nevada Supreme Court to apply Nevada's own immunity law to the claim, meaning that the claim could proceed in Nevada even though it would not have been maintainable in California (id., citing Franchise Tax Bd. of Cal. v Hyatt, 538 US 488, 498-499 [2003]). Nonetheless, in the 2019 Hyatt decision, the United States Supreme Court held that the action had to be dismissed — even after two decades of litigation and the entry of a final judgment in favor of the plaintiff — on the constitutional ground of sovereign immunity. Here, too, even if this action could not have been brought in New Jersey (as the majority maintains), New Jersey Transit would still be entitled to dismissal based on the sovereign immunity of the State of New Jersey.
The majority is again wrong in stating that the Supreme Court in Hyatt "did not address the dilemma of permitting California to have the action dismissed in Nevada based on the sovereign immunity defense and California's immunity from suit, which would foreclose plaintiffs from suing defendants in California, essentially denying plaintiffs a forum to seek [*12]redress for the tortious conduct by California state actors." The Supreme Court, in holding that the action had to be dismissed on the ground of sovereign immunity, was fully cognizant of the fact that the claim in Hyatt would not have been maintainable in California (see id., 139 S Ct at 1491). Plainly, under Hyatt, whether a claim against a state actor could be maintained in that state has no bearing on the merits of the sovereign immunity defense to an action on the same claim in the courts of a different state.
The majority also misunderstands the reason for the Hyatt Court's discussion of "case-specific costs" (139 S Ct at 1499). That discussion was part of the Supreme Court's consideration of the question of whether to overrule one of its own precedents (as it ultimately did in Hyatt) or, alternatively, to adhere to that precedent (which the Supreme Court majority believed to have been wrongly decided) as a matter of stare decisis. In deciding the instant appeal, this Court — the Appellate Division, First Department, Supreme Court of the State of New York — faces no such dilemma. The sovereign immunity issue having been authoritatively resolved by the United States Supreme Court in Hyatt, it is our duty simply to apply the Hyatt holding to the case before us. Stated otherwise, there is no occasion for the majority to "resolve this issue" (i.e., whether to dismiss an action on the ground of sovereign immunity when the action cannot be maintained in the defendant sovereign's own courts), since that issue has already been resolved for us by the United States Supreme Court in Hyatt.[FN17] Accordingly, the majority's discussion "analogizing [the present issue] to the legal framework for the forum non conveniens doctrine," and weighing the various factors that would have been considered upon a forum non conveniens motion, is completely beside the point. The State of New Jersey enjoys sovereign immunity from suit and has not consented to have its instrumentalities (such as New Jersey Transit) sued in New York. That should be the end of the matter, whether or not the majority chooses to characterize the result as "absurd."
For all of the foregoing reasons, I believe that we should reverse, and grant New Jersey Transit's motion to dismiss on the ground of sovereign immunity. Accordingly, I respectfully dissent.
Order Supreme Court, New York County (Adam Silvera, J.), entered October 6, 2020, affirmed, without costs.
Opinion by Oing, J. All concur except Friedman and Moulton JJ. who dissent in an Opinion by Friedman, J.
Webber, J.P., Friedman, Oing, Moulton, Kennedy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 24, 2022



Footnotes

Footnote 1: The applicable New Jersey statute of limitations expired on February 9, 2019 (see NJ Stat Ann § 59:8-8[b]).

Footnote 2: NJT's assertion that it did not consent to suit or expressly waive its sovereign immunity is based solely on an affirmation by an attorney with no personal knowledge of NJT's operations. We note that the record is bereft of any evidence, such as a contract, of NJT's operations at the Port Authority Bus Terminal, which may be dispositive as to whether there is consent or waiver.

Footnote 3: CPLR 327(a) provides:

"When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."
Footnote 4: Plaintiffs cannot commence their action in New Jersey or New York federal court based on diversity jurisdiction because of the Eleventh Amendment's bar (see e.g. Lapides v Board of Regents of the Univ. Sys. of Ga., 535 US 613 [2002]). Further, the New Jersey Tort Claims Act provides no consent to suits in federal court (see Belfand, 196 AD3d at 69).
Footnote 5: The defendants in this action are New Jersey Transit Corporation, NJ Transit Bus Operations, Inc., and a bus driver employed by the corporate defendants (collectively, New Jersey Transit). The action arises from an alleged accident in Manhattan that involved a New Jersey Transit bus.

Footnote 6: Belfand elaborates: "The Hyatt Court dramatically altered sovereign immunity analysis: the decision as to whether sovereign immunity should be honored was moved from the forum state, guided by principles of comity, to the [defendant] sister state, vesting it with sole discretion as to whether to consent to the forum state's jurisdiction" (196 AD3d at 67 [emphasis added]).

Footnote 7: As more fully discussed below, I see no merit in the majority's theory — based on a New Jersey court rule governing venue that has no jurisdictional implications — that the instant suit could not have been maintained in New Jersey. Further, even if the majority's draconian (and unsupported) interpretation of New Jersey law were correct, that could not override a constitutional holding of the United States Supreme Court.

Footnote 8: In fact, contrary to the assertion in plaintiffs' appellate brief, plaintiffs did not argue before the motion court that they could not have brought this action in a New Jersey court. Rather, plaintiffs, in opposing the motion to dismiss in the motion court, seem to have taken the position that the New Jersey court rule designating "the county in which the cause of action arose" as the venue for a Superior Court action against a public entity (NJ Rules of Court R 4:3-2[a][2]) constituted a consent by New Jersey to a suit against its instrumentalities in another state on claims arising in that state. The paragraph in plaintiff's counsel's opposition affirmation referring to the New Jersey venue rule reads as follows:
"If the defendants' position is that their waiver of sovereign immunity pursuant to the NJTCA [New Jersey Tort Claims Act] applies only to actions brought in the State of New Jersey, that position finds no support in [Hyatt] or any of the other cases cited in support of the motion. Nor does that position find any support in the NJTCA itself which does not limit the waiver of sovereign immunity to suits brought only in New Jersey. In fact, under New Jersey law, venue against public entities must be laid in the county where the cause of action arose. See Rule 4:3-1 [sic] of the Rules Governing the Courts of the State of New Jersey; Divisions, Venue; Transfer of Actions (emphasis added). Furthermore, the NJTCA finds a consistent legal framework under New York law for claims brought against the Metropolitan Transit Authority and the New York City Transit Authority. Fetahu, supra. Therefore, allowing suit against NJT in New York State court is not hostile to the State of New Jersey and is consistent with the Full Faith and Credit Clause. Id."
Footnote 9: The majority concedes, as it must, that, on this record, New Jersey Transit's sovereign immunity defense has not been "expressly and unambiguously waive[d]," as required to establish the waiver of a state's constitutional immunity from suit in a given forum (see e.g. PennEast Pipeline Co., LLC v New Jersey, __ US __, 141 S Ct 2244, 2258 [2021] [a state's consent to be sued in a forum in which it would otherwise have immunity "must be unequivocally expressed"] [internal quotation marks omitted]; Raygor v Regents of Univ. of Minn., 534 US 533, 547 [2002] [state defendant did not "consent" to be sued in federal court where it "raised its Eleventh Amendment defense at the earliest possible opportunity by including that defense in its answers"] [internal quotation marks omitted]). Nonetheless, and in spite of the fact that plaintiffs themselves have raised no such issue, the majority, in footnote 2 of its opinion, speculates that New Jersey Transit's sovereign immunity from being sued on the instant claims in New York may have been waived in some unspecified fashion in connection with its "operations at the Port Authority Bus Terminal." If evidence of such a waiver existed, plaintiffs presumably would have come forward with it in their opposition to the motion to dismiss, given that evidence of such a waiver would have been ascertainable through discovery (which was already well under way when the motion to dismiss was made) or through examination of the public record. Plaintiffs not only did not come forward with such evidence, but also did not argue in opposition to the motion to dismiss that they needed more time to obtain evidence of the sort of waiver posited by the majority.

Footnote 10: In view of the quoted unequivocal statements from Hyatt, I do not understand the majority's statement that Hyatt did not "mak[e] a clear pronouncement on sovereign immunity" and left unspecified issues "unresolved." Contrary to the majority's implicit criticism of me for "embracing Hyatt," I simply follow Hyatt as a precedent by which this Court is bound, regardless of any personal agreement or disagreement I might have with that decision. We do not have the prerogative of rejecting a plainly controlling precedent of the United States Supreme Court on an issue of federal constitutional law.

Footnote 11: In Alden, the United States Supreme Court held that Congress has no power under article I of the Constitution to require a state to submit to suit on a federal claim in that state's own courts (id., 527 US at 712).

Footnote 12: Given that, in the 19th century, states generally were not subject to tort liability at all in the United States, the majority fails to advance its position by citing a United States Supreme Court decision from the 1880s, rendered in an action against a private railroad that did not involve any issue of sovereign immunity, for the broad proposition that "[i]t is the duty of every state to provide, in the administration of justice, for the redress of private wrongs" (Missouri Pac. Ry. Co. v Humes, 115 US 512, 521 [1885]). Nor does the majority bolster its position by citing to Attalla v State of New York (10 NY2d 237 [1961]), which (although the defendant in that case was the State of New York) did not raise any issue of sovereign immunity, and which, as a statement of New York law, has no relevance to the question of whether the State of New Jersey is legally obligated to allow its instrumentalities to be sued in some forum for the torts of their employees.

Footnote 13: I am puzzled by the majority's baseless misstatement that "[t]he dissent does not dispute that plaintiffs are foreclosed from suing in New Jersey." To be clear, I emphatically do dispute the majority's mistaken view that the New Jersey venue rule somehow "foreclosed" plaintiffs from suing New Jersey Transit in a New Jersey court on a tort cause of action arising in New York. In this regard, it should be noted that, when the subject accident occurred in February 2017, the prospect of the Supreme Court's overruling of its 1979 precedent under which a state had the discretion to entertain a private lawsuit against another state (Nevada v Hall, 440 US 410 [1979]) was known. In April 2016, the Supreme Court (in deciding an earlier appeal from the Hyatt case) split 4-4 on the question of whether to overrule Hall, thereby leaving that precedent in place (see Franchise Tax Bd. of Cal. v Hyatt, 578 US 171, 173 [2016]).

Footnote 14: Of course, no such waiver of New Jersey's sovereign immunity exists as to suits in New York.

Footnote 15: Again, when the subject accident occurred in February 2017, the possibility that Hall would be overruled by the Supreme Court was already in view, as demonstrated by the 4-4 split on that question in the April 2016 Hyatt decision (see id., 578 US at 173).

Footnote 16: I have difficulty seeing the relevance of the majority's discussion of the factors considered by the New Jersey courts in determining whether to grant a plaintiff relief from the statute of limitations, where an action on the same claim was previously timely filed in another jurisdiction and dismissed for a reason other than on the merits. As previously noted, plaintiffs had good reason to bring this action in New Jersey in the first instance, as the future viability of Hall was in question before the subject accident occurred.

Footnote 17: And, as previously discussed, there is little or no reason to believe that the instant action could not have been brought against New Jersey Transit in New Jersey simply because the claim arose in New York.